United States District Court
Southern District of Texas
**ENTERED**
August 05, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, § § § § | |
| Plaintiff, § | CIVIL ACTION NO. H-20-3622 |
| VS. § § | |
| TXEX ENERGY INVESTMENTS, LLC, § § | |
| Defendant. § | |

## MEMORANDUM AND OPINION

Zurich American Insurance Company issued three workers' compensation policies to TxEx Energy Investments, LLC between 2016 and 2019. At the beginning of each policy period, Zurich provided TxEx with an estimated premium amount based on a coding system used in Texas. The amounts varied depending on a business's operations and risk exposure to employees. TxEx was assigned code 4740 for the classification "Oil Refining—Petroleum & Drivers." Under the policies, Zurich had three years after the policy periods ended to audit TxEx to determine the final premium amount and to request any additional premium payments resulting from the audit.

During the policy periods, TxEx brought a potential coding issue to Zurich's attention in May 2018. In April 2019, Zurich and TxEx met to discuss whether TxEx's initial code accurately reflected its business operations. Zurich investigated and determined that the TxEx code should be changed to 8350 for "Gasoline or Oil Dealer & Drivers." TxEx agreed. Applying the new code resulted in an outstanding balance on TxEx's final premiums of $1,392,395.71.

TxEx refused to pay. Zurich sued for breach of contract to collect the outstanding balance. (Docket Entry No. 1). TxEx counterclaimed that Zurich had previously breached the contract by failing to timely assign the proper code. (Docket Entry No. 7 at ¶¶ 76–78).

1

Zurich has moved for summary judgment on the claim and the counterclaim. (Docket Entry Nos. 26 and 27). TxEx responded, moved for leave to file an amended answer, and requested a continuance of Zurich's motion for summary judgment under Rule 56(d) of the Federal Rules of Civil Procedure. (Docket Entry Nos. 33, 34, 35). Zurich replied to TxEx's response, responded to TxEx's motion for leave, and responded to TxEx's Rule 56(d) request. (Docket Entry Nos. 37, 38, 39). TxEx replied to Zurich's response to its motion for leave, and Zurich surreplied. (Docket Entry Nos. 40, 41, 42).

Based on the motions, responses, and replies; and the applicable law, the court grants the motion for summary judgment, for the reasons explained below. Zurich must submit a proposed final judgment no later than **August 29, 2022**.

## I. Background

TxEx is the parent company of a portfolio of companies that have been involved in various oil-related operations over the last two decades, including oil refining, petroleum logistics, and crude oil transportation. (Docket Entry No. 35-1 at ¶ 5). Zurich issued six insurance policies to TxEx between 2016 and 2018. Three of the policies provided workers' compensation coverage, obligating Zurich to pay damages for covered bodily injuries to TxEx's employees. These policies were:

- workers' compensation policy no. WC 9819549-02, providing workers' compensation and employer's liability coverage from 4/27/16 to 4/27/17;

- workers' compensation policy no. WC 9819549-03, providing workers' compensation and employer's liability coverage from 4/27/17 to 4/27/18; and

- workers' compensation policy no. WC 9819549-04, providing workers' compensation and employer's liability coverage from 4/27/18 to 4/27/19.

(Docket Entry No. 27-2 at 138–43; Docket Entry No. 27-3 at 75–80; Docket Entry NO. 27-4 at 114–19). Zurich also issued three commercial auto and general liability policies to TxEx, but those policies are not relevant to this dispute. (Docket Entry No. 1 at ¶ 6; Docket Entry No. 7 at ¶ 6).

The premiums in the workers' compensation policies were not fixed at a set rate or amount at the beginning of each policy period. The final premium provision in the policy stated:

> **E. Final Premium**
> The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

(Docket Entry No. 27-2 at 142; Docket Entry No. 27-3 at 79; Docket Entry No. 27-4 at 118).

The policies also stated that Zurich could audit TxEx's records relating to the policy within three years of the end date of that policy to determine the final premium. The policies stated:

> **G. Audit**
> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

(Docket Entry No. 27-2 at 142; Docket Entry No. 27-3 at 79; Docket Entry No. 27-4 at 118).

In Texas, employers are classified for workers' compensation purposes based on "the exposure common to those employers." *See Texas Workers' Compensation and Employers' Liability Manual,* Rule IV (Dec. 3, 2012), *available at*

3

https://www.tdi.texas.gov/wc/regulation/documents/wcmanual.pdf. Insurance companies like Zurich must use these classifications to set premium rates or amounts. (*Id.*, Rule VI). To determine the estimated amount of the premium, Zurich assigned four-digit codes set by the National Council on Compensation Insurance, referred to as "NCCI codes," based on information provided by insureds. (Docket Entry No. 26 at 2). The codes reflect employer classifications based on their operations. (*Id.* at 7 n.1; *see also* Docket Entry No. 35-11 at ¶ 4). The classifications are based on risk exposure in a given business's operations. (Docket Entry No. 26 at 7 n.2 (citing NCCI, ABCS OF EXPERIENCE RATING, *available at* https://www.ncci.com/Articles/Documents/UW_ABC_Exp_Rating.pdf); *see also* Docket Entry No. 35-11 at ¶¶ 4–5)). They affect the experience modification factor, a rating element used in premium determination. This factor recognizes "the differences among individual insureds with respect to safety and loss prevention, by comparing the experience of the individual insured with that of the average insured in the same classification." (Docket Entry No. 26 at 7 n.2; *see also* Docket Entry No. 35-11 at ¶¶ 4–5). A safer-than-average workplace will receive an experience modification rating below 1.00, while a more dangerous workplace will have a score above 1.00. NCCI, ABCS OF EXPERIENCE RATING 7, *available at* https://www.ncci.com/Articles/Documents/UW_ABC_Exp_Rating.pdf. Businesses use the experience modification factors to evaluate workplace risks. (Docket Entry No. 35-11 at ¶ 5).

The workers' compensation policies contained a "classifications" provision, stating as follows:

> **B. Classifications**
> Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper

4

> classifications, rates and premium basis by endorsement to this policy.

(Docket Entry No. 27-2 at 142; Docket Entry No. 27-3 at 79; Docket Entry No. 27-4 at 118).

The policies explained that Zurich would also assign TxEx an experience rating, which would affect TxEx's experience modification factor:

> Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. . . .
>
> You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

(Docket Entry No. 27-2 at 158; Docket Entry No. 27-3 at 93; Docket Entry No. 27-4 at 134).

When Zurich issued the three workers' compensation policies to TxEx in 2016, 2017, and 2018, it used NCCI code 4740 for the classification "Oil Refining—Petroleum & Drivers." (Docket Entry No. 27-2 at 75; Docket Entry No. 27-3 at 64; Docket Entry No. 27-4 at 67). Zurich assigned TxEx's code based in part on spreadsheets that TxEx's broker, Lockton, prepared and provided to Zurich as late as 2016, stating that NCCI code 4740 was the applicable code. (Docket Entry Nos. 27-8, 27-9).

Despite the representation that 4740 was the correct coding, TxEx had sold the subsidiary that operated gas pipelines and gas processing plants. (Docket Entry No. 7 at ¶¶ 70–71; Docket Entry No. 26 at 11; Docket Entry No. 35-1 at ¶¶ 5–6). TxEx's sale of that subsidiary eliminated all of TxEx's gas midstream operations from its portfolio of businesses. (Docket Entry No. 35-1 at ¶¶ 5–6). On February 24, 2015, TxEx's insurance broker with Lockton, Marcella Campana, emailed Glen Walla, the Senior Underwriter at Zurich, informing him of the sale, but Walla did

5

not mention that the sale would affect TxEx's NCCI coding. (Docket Entry No. 35-16). On March 5, 2015, Campana notified Walla that the sale was complete. (Docket Entry No. 35-17). On March 11, 2015, Campana emailed Walla and other Zurich employees with TxEx's submission for a policy renewal for the 2015 to 2016 period, describing TxEx's business:

> [TxEx] currently has 3 divisions of operations, as it sold off its Midstream Operations in February of this year:
> - Spark Energy – Independent retail energy services company
> - Associated Energy Services – Purchases, sells, and markets crude oil, natural gas and NGLs
> - Transoil – Crude Oil Hauling.

(Docket Entry No. 35-20).

On March 27, 2015, Walla, on behalf of Zurich, emailed Danny McIver, another Zurich employee, explaining that a call would be held with Campana to discuss TxEx's "different (and changing) operations," and "to get an idea on where they are today and where they'll be in the future." (Docket Entry No. 35-21). On June 9, 2015, Campana emailed Zurich asking it to remove the sold subsidiary from the policies. (Docket Entry No. 35-22). Although these communications discussed TxEx's change in its composition and operations, they did not address the effect the change would have on TxEx's NCCI coding.

Due at least in part to TxEx's classification, TxEx's experience modification rate increased from .86 to 1.25 in 2017, from 1.25 to 1.86 in 2018, and from 1.86 to 2.43 in 2019. (Docket Entry No. 35-1 at ¶ 14–15; Docket Entry Nos. 35-5, 35-6). As a result of the high experience modification rates, Campana emailed Zurich on or around May 25, 2018, to receive clarification on the use of the 4740 classification, and Zurich responded that it thought the 4740 coding for the classification "Oil Refining—Petroleum & Drivers was correct, but that "[i]n order to review if

6

the code should be changed, [Zurich] would normally do a mock audit." (Docket Entry No. 35-8).

TxEx had been trying to procure a Master Services Agreement with Sundance Energy, but learned on May 3, 2018, that the deal could not proceed because Sundance had an experience modification rate cutoff of 1.0. (Docket Entry No. 35-10). On May, 10, 2018, TxEx and Lockton began discussing that TxEx may be coded incorrectly based on the 2015 change in the company's operations. (Docket Entry No. 27-12).

Zurich and TxEx met in April 2019 to discuss the audits of TxEx's premiums. (Docket No. 1 at ¶ 12; Docket No. 7 at ¶ 12). TxEx and its new broker, Marsh JLT Specialty, expressed to Zurich that the 4740 code was no longer applicable to TxEx, and that code 8350 for "Gasoline or Oil Dealer & Drivers" was more appropriate. (Docket No. 1 at ¶ 13; Docket Entry No. 7 at ¶ 13; Docket Entry No. 26 at 11–12).

Zurich investigated the requested code change, reopened the audits between May and June 2019, updated TxEx's code to 8350, readjusted TxEx's experience modification rates, and sent TxEx the revised audit of premiums. (Docket Entry No. 26 at 12; Docket Entry No. 34 at 13; Docket Entry No. 35-11 at ¶ 8; Docket Entry No. 35-13). The experience modification rates substantially decreased, as shown in the table below:

| NCCI | | | |
|---|---|---|---|
| ERM Eff. Date | Original ERM | Revised ERM | Revised % vs. Initial |
| 4/27/15 | 0.74 | | |
| 4/27/16 | 0.86 | 0.86 | 100% |
| 4/27/17 [3] | 1.25 | 0.84 | 149% |
| 4/27/18 | 1.86 | 0.93 | 200% |
| 5/11/19 | 2.43 | 1.09 | 223% |

(Docket Entry No. 35-11 at ¶ 8; Docket Entry No. 35-13).

Marsh, on TxEx's behalf, agreed to pay the revised audited premium based on the new NCCI code in January 2020. (Docket Entry No. 27-5 at 1). Zurich sent a statement of account in February 2020 showing that TxEx owed Zurich $1,689,862.15 based on the new NCCI code retroactively applied to TxEx for the 2016 to 2019 policies. (Docket Entry No. 27-6). TxEx has not paid an outstanding amount of $1,392,395.71. (Docket Entry No. 27-7). Zurich seeks summary judgment to recover that amount.

## II. The Summary Judgment Evidence

In support of its motion, Zurich submits the following summary judgment evidence:

- a declaration by Carla Flammini, Legal Collection Specialist of Financial Operations at Zurich, (Docket Entry No. 27-1);

- workers' compensation policy no. WC 9819549-02, providing workers' compensation and employer's liability coverage for the policy period 4/27/16 to 4/27/17, (Docket Entry No. 27-2);

- workers' compensation policy no. WC 9819549-03, providing workers' compensation and employer's liability coverage for the policy period of 4/27/17 to 4/27/18, (Docket Entry No. 27-3);

- workers' compensation policy no. WC 9819549-04, providing workers' compensation and employer's liability coverage for the policy period of 4/27/18 to 05/11/19, (Docket Entry No. 27-4);

- January 2020 emails between Blake Alan, Senior Underwriter at Zurich, and Victor Chou, Vice President of Marsh JLT Specialty, (Docket Entry No. 27-5);

- January and February 2020 emails between Alan, Chou, Flammini, and Kelly M. Baston, Vice President of Energy and Power at Marsh JLT Specialty, (Docket Entry No. 27-6);

- an August 27, 2020, letter from Cozen O'Connor on behalf of Zurich to TxEx and attached Statement of Account, (Docket Entry No. 27-7);

- March 2016 emails between Marcella Campana, Associate Account Executive at Lockton and Glen Walla, Senior Underwriter at Zurich, (Docket Entry No. 27-8);

- a Historical and Projected Exposure Workbook attachment to an email dated March 29, 2016, from Campana (Docket Entry No. 27-9);

- a declaration by Alicia G. Curran, attorney representing Zurich in this lawsuit, (Docket Entry No. 27-10);

- a January 2019 email between Jeffrey A. Henningsen, President and Partner of Lockton, Jeffrey Maronen, Vice President of Xcalibur Logistics, and Kyle A. Lanigan of Lockton, (Docket Entry No. 27-11); and

- May 10, 2018 emails between Nick Nixon, Environmental Health & Safety Manager at TxEx, and Campana, (Docket Entry No. 27-12).

In response to Zurich's summary judgment motion, TxEx submits the following summary judgment evidence:

- a declaration by Todd Gibson, the Executive Vice President and Chief Financial Officer of TxEx, (Docket Entry No. 35-1);

- workers' compensation policy no. 9819549-02, providing workers' compensation and employer's liability coverage for the policy period 4/27/16 to 4/27/17, (Docket Entry No. 35-2);

- workers' compensation policy no. 9819549-03, providing workers' compensation and employer's liability coverage for the policy period 4/27/17 to 4/27/18, (Docket Entry No. 35-3);

- workers' compensation policy no. WC 9819549-040, providing workers' compensation and employer's liability coverage for the policy period 4/27/18 to 4/27/19, (Docket Entry No. 35-4);

- the NCCI revised experience modification factor score sheet effective 4/27/2017, (Docket Entry No. 35-5);

- the NCCI workers' compensation interstate experience rating score sheet effective 4/27/2018, (Docket Entry No. 35-6)

- May 2018 emails between Campana and Nixon, (Docket Entry Nos. 35-7, 35-8);

- September 2018 emails between Lanigan, Chelsea Werland, Nu-Devco's Accounting Assistant at Nu-Devco, Mike Williams, Treasurer Spark Energy, Maronen, and Campana (Docket Entry No. 35-9);

- May 2018 emails between Deela Roe, Director of Credit at TxEx, and Robin Lucas, Executive Assistant at Sundance Energy, (Docket Entry No. 35-10);

9

- a declaration by Burl Daniel, an expert witness for TxEx, (Docket Entry No. 35-11);

- Daniel's curriculum vitae, (Docket Entry No. 35-12);

- the expert report of Daniel, (Docket Entry No. 35-13);

- a declaration by Phillip Dye, attorney for TxEx, (Docket Entry No. 35-14);

- March and April 2019 email correspondence between Debora Mann, Senior Underwriting Associate at Zurich, Allan, and Ross Walton, Senior Premium Auditor at Zurich, (Docket Entry No. 35-15);

- February 2015 emails between Campana and Walla, (Docket Entry No. 35-16);

- March 2015 emails from Campana to Walla, (Docket Entry No. 35-17, 35-18, 35-20, 35-21);

- February to March 2015 emails between Campana and Walla, (Docket Entry No. 35-19);

- June to August 2015 emails between Campana and Walla, (Docket Entry No. 35-22);

- a July 2015 audit by Walton, (Docket Entry No. 35-23); and

- a declaration by Robert Gwin, former President of Anadarko Petroleum Corporation, (Docket Entry No. 35-24).

**III.   The Legal Standard**

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion,"

and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

## IV. Analysis

### A. TxEx Breach for Failure to Pay Premiums

Zurich argues that TxEx breached its contract because it has not paid the outstanding balance on final premiums due, which Zurich requested after it audited TxEx's businesses in 2019 and updated its NCCI code. TxEx does not dispute the amount of final premiums due as a result of the change in its NCCI Code. Instead, TxEx argues that its breach is excused because Zurich also breached the contract by failing to assign the proper code at the outset. TxEx alternatively argues that, at a minimum, it needs time for discovery to defend its position that Zurich also breached the contract. The court first addresses whether TxEx breached the contract in the first instance.

11

Under Texas law, "a breach of contract action requires proof of four elements: (1) formation of a valid contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) 'the plaintiff sustained damages as a result of the breach.'" *S & S Emergency Training Sols., Inc., v. Elliot*, 564 S.W.3d 843, 848 (Tex. 2018) (citation and internal quotation marks omitted).

It is undisputed that Zurich issued TxEx three workers' compensation policies in 2016, 2017, and 2018, and that TxEx had a duty to pay final premiums, not estimated premiums, under the contract based on its NCCI coding. The duty to pay final premiums based on the correct coding arises from both the contracts and Texas law.

The Texas Insurance Code authorizes the Texas Department of Insurance to "adopt and enforce all reasonable rules as are necessary to carry out" the Texas laws on workers' compensation insurance. TEX. INS. CODE § 2051.201; *see also id.* § 2051.002. Workers' compensation insurance policies are highly regulated. The Commissioner of the Texas Department of Insurance "prescribe[s] standard policy forms and a uniform policy for workers' compensation insurance." *Id.* § 2052.002; *see also* TEX. LAB. CODE § 406.501. As the Texas Court of Civil Appeals has explained:

> [i]t was the intent and purpose of the [Texas] Legislature by these enactments to remove the amount of premiums on workmen's compensation insurance policies from the field of bargaining. The establishment of premium rates is vested exclusively in the Commission and the rates promulgated by the Commission are not subject to alteration by agreement, waiver, estoppel, or any other device. As a matter of law, the insurance carrier agrees to collect, and the subscriber agrees to pay, the rate prescribed by the Commission. That rate is a part of every contract, regardless of any understanding by the parties. The insurance carrier cannot charge more, nor bind itself to take less, than the prescribed lawful rate of premium. A contract to rebate, directly or indirectly, any part of the prescribed premium is illegal and void, and cannot be a defense in a suit for the full premium. Where a rate is prescribed by one of the state's regulatory bodies, it is the only rate the parties can contract for. To allow parties to fix any other rate would impair or destroy the state's regulatory system and its policy of uniform and nondiscriminatory rates, in which system and policy the public has the paramount interest.

12

*Assoc. Emp. Lloyds v. Dillingham*, 262 S.W. 2d 544, 546 (Tex. Civ. App.—Fort Worth, 1953, writ ref'd) (collecting cases); *see also Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 94 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (explaining that the effect of the Texas Insurance Code provisions was to "keep the amount of premiums to be paid from the field of bargaining"). Texas courts have held that a "side agreement to a valid and enforceable workers' compensation policy which violates a statutory or regulatory requirement is invalid and ineffective." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 490 (5th Cir. 2003) (quoting *Brookshire Grocery Co. v. Bomer*, 959 S.W.2d 673, 676 (Tex. App.—Austin 1997)).

*Silver Threads v. Ins. Co. of N. Am.*, 530 S.W.2d 874 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ.), is instructive. In *Silver Threads*, the Insurance Company of North America issued a workers' compensation policy to Silver Threads, Inc., a nursing home, requiring an advanced estimated premium payment at the beginning of the policy, followed by payment of a premium amount determined by a retroactive audit at the end of the policy term. *Id.* at 874. The insurer incorrectly assigned Silver Threads the code for a hospital, resulting in an understated estimated premium. *Id*. at 874–75. The insurer sent Silver Threads a bill for the additional premium amount, but Silver Threads cancelled its coverage and refused to pay the charge. *Id.* at 875. The court held that Silver Threads had to pay the corrected premium amount because it was set by the State Board of Insurance Commissioners, making "defenses such as estoppel, waiver, and mutual mistake" unavailable. *Id*. at 875–76 (citing *Associated Employers Lloyds v. Dillingham*, 262 S.W.2d 544 (Tex. Civ. App.—Fort Worth 1953, writ ref.); *Traders & Gen. Ins. Co. v. Frozen Food Express*, 255 S.W.2d 378 (Tex. Civ. App.—Austin 1953, writ ref. n.r.e.); *Brown & Root, Inc. v. Traders & General Ins. Co.*, 135 S.W.2d 534 (Tex. Civ. App.—Galveston 1939, writ dism. judg. cor.)).

As in *Silver Threads*, TxEx was undercharged premiums based on an incorrect initial coding. By law, TxEx is required to pay the premium rate based on the correct coding, even if that coding was not corrected until after the policy period ended.

Under the contract and Texas law, TxEx must pay the final premiums owed based on correct coding. TxEx has failed to pay the outstanding amount of $1,392,395.71. The court now turns to whether TxEx is excused from payment on the basis that Zurich materially breached the insurance contracts by failing to assign the correct code earlier.

### B. The Material Breach by Failing to Timely Set the Premium

TxEx filed a counterclaim alleging that Zurich materially breached the workers' compensation contracts by not recoding TxEx in a timely manner, resulting in lost business due to inflated experience modification rates. TxEx moves for leave to file an amended answer clarifying that this is an affirmative defense to Zurich's breach of contract claim. TxEx argues that "[i]t is a well-settled concept within contract law that when [a] party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." (Docket Entry No. 34 at 21; *see also* Docket Entry No. 33).

"Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CBI Indus.*, Inc., 907 S.W.2d 517, 520 (Tex. 1995)). A court must give effect to the parties' intentions as expressed in the policy language. *Colony Ins. Co. v. Robinson*, No. CIV. A. H-09-3830, 2010 WL 3522983, at *2 (S.D. Tex. Sept. 8, 2010) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983)). The language is given its plain, ordinary meaning, considering the policy as a whole, unless the policy itself shows that the parties intended the terms to have a different,

technical meaning. *Id*. (citing *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex. 1984); *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 274 (Tex. Civ. App.—Houston [1st Dist.] 2001, no pet. h.) ("[W]e construe the terms of the policy as a whole, and consider all of its terms, not in isolation, but within the context of the policy.").

All three workers' compensation policies contain the following classification provision:

> These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

(Docket Entry No. 27-2 at 142; Docket Entry No. 27-3 at 79; Docket Entry No. 27-4 at 118). The final premium provision states:

> The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy.

(*Id.*). The audit provision states:

> You will let us examine and audit all your records that relate to this policy. . . . We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

(*Id.*). Under these provisions, taken together, Zurich could charge TxEx a final premium, different from the estimated premium, and Zurich could conduct audits within three years of the date that a policy ended to determine that final premium. There are no policy provisions suggesting that the parties intended these terms to have any other meaning.

The question is not if, but when, Zurich had a duty under the workers' compensation policies to correct TxEx's coding. The earliest workers' compensation policy was effective on April 27, 2016, and ended on April 27, 2017. (Docket Entry No. 27-2 at 212). Zurich had three

15

years after the period ended—until April 27, 2020—to conduct audits to determine the final premium that TxEx owed under these policies.

In May 2019, Zurich reopened TxEx's premium audits. (Docket Entry No. 35-11 at ¶ 8). This is within three years, as contractually permitted. TxEx does not dispute that the audits were conducted within a contractually permissible period. Instead, TxEx argues that because Zurich knew that TxEx had a change in business operations as early as 2015, Zurich should be liable for not auditing TxEx then and revising the code to take into account the change in TxEx's operations resulting from the sale of its subsidiary. But TxEx points to no duty under Texas law or the workers' compensation policies requiring Zurich to audit TxEx immediately after receiving notice that some change in business operations had occurred. Instead, the contract language gives Zurich three years from the time the policies ended to audit to determine the correct final premiums.

Zurich did not breach the contract. Because Zurich did not breach, TxEx is not excused from performing its obligations to pay final premiums.

      C.     TxEx's Rule 56(d) Request

TxEx moves for additional discovery under Rule 56(d) of the Federal Rules of Civil Procedure, arguing that it would make a difference to TxEx's ability to defend itself at this stage of litigation. Under Rule 56(d), a court may allow time for additional discovery if a nonmovant shows that without the discovery, it cannot present facts essential to justify its opposition to summary judgment. FED. R. CIV. P. 56(d). "Rule 56(d) permits 'further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022) (per curiam) (quoting *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013)).

TxEx argues that it needs additional discovery on Zurich's internal policies following TxEx's 2015 notification that it had a change in business operations, and on whether TxEx suffered damages from lost business opportunities due to an inflated experience modification rating. (Docket Entry No. 34 at 5; *see also* Docket Entry No. 35-10). But discovery on these issues would not make a material difference to the court's analysis or outcome. Zurich had up to three years under the contract after the end date of the policies to audit to determine the final premiums. Because Zurich did not breach the contracts, or any other identified duty, Zurich's internal policies and TxEx's asserted lost business opportunities are not material factual disputes on which discovery is needed to allow TxEx to respond to the summary judgment motion.

TxEx's motion for additional discovery, (Docket Entry No. 34), is denied.

### V. Conclusion

Zurich's motion for summary judgment, (Docket Entry No. 26), is granted. TxEx's motion for additional discovery, (Docket Entry No. 34), is denied. TxEx's motion for leave to file an amended answer clarifying its breach of contract defense, (Docket Entry No. 33), is moot. Zurich must submit a proposed final judgment no later than **August 29, 2022**.

SIGNED on August 5, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge